# EXHIBIT H

Copyright © 1998 NFPA, All Rights Reserved

**NFPA 921**

**Guide for**

# Fire and Explosion Investigations

**1998 Edition**

This edition of NFPA 921, *Guide for Fire and Explosion Investigations*, was prepared by the Technical Committee on Fire Investigations and acted on by the National Fire Protection Association, Inc., at its Fall Meeting held November 17–19, 1997, in Kansas City, MO. It was issued by the Standards Council on January 16, 1998, with an effective date of February 6, 1998, and supersedes all previous editions.

Changes other than editorial are indicated by a vertical rule in the margin of the pages on which they appear. These lines are included as an aid to the user in identifying changes from the previous edition.

This document has been submitted to ANSI for approval.

## Origin and Development of NFPA 921

NFPA 921, *Guide for Fire and Explosion Investigations*, was developed by the Technical Committee on Fire Investigations to assist in improving the fire investigation process and the quality of information on fires resulting from the investigative process. The guide is intended for use by both public sector employees who have statutory responsibility for fire investigation and private sector persons conducting investigations for insurance companies or litigation purposes. The goal of the Committee is to provide guidance to investigators that is based on accepted scientific principles or scientific research.

The first edition of the document, issued by the Association in 1992, focused largely on the determination of origin and cause of fires and explosions involving structures. The second edition of the document included revised chapters on the collection and handling of physical evidence, safety, and explosions. NFPA 907M, *Manual for the Determination of Electrical Fire Causes*, was withdrawn as an individual document and was integrated with revisions into this document as a separate chapter. Elements of NFPA 907M that relate to other chapters of this document were relocated appropriately. New chapters dealing with the investigation of motor vehicle fires, management of major investigations, incendiary fires, and appliances were added.

The third edition of the document includes a new chapter on fuel gas systems in buildings and the impact of fuel gases on fire and explosion investigations (Chapter 19). The chapter on electricity and fire (Chapter 14) was rewritten to improve organization, clarify terminology, and add references. In the chapter on fire patterns (Chapter 4), several sections were revised. Other revisions were made in Chapter 9 in the subject of preservation of the fire scene and physical evidence. This edition also includes new text regarding ignitible liquid detection canine/handler teams.

## Technical Committee on Fire Investigations

**Daniel L. Churchward,** *Chair*
Kodiak Enterprises, Inc., IN [SE]

**Richard L. P. Custer,** *Secretary*
Custer Powell, Inc., MA [SE]

**Thomas W. Aurnhammer,** Farmington Fire Dept., NM [U]
**Russell K. Chandler,** Dept. of Fire Programs, VA [E]
**John David DeHaan,** California Criminalistics Inst., CA [U]
Rep. California Dept. of Justice/Bureau of Forensic Services
**Michael DiMascio,** Solutions Engr Inc., MA [SE]
**Bruce V. Ettling,** T. F. I. Services, WA [SE]
**Andrew M. Giglio,** U.S. Fire Administration, MD [U]
**Terry-Dawn Hewitt,** McKenna Hewitt, AB, Canada [C]
**Ronald L. Hopkins,** Eastern Kentucky University, KY [U]
Rep. NFPA Fire Service Section
**David J. Icove,** Tennessee Valley Authority, TN [U]
**Patrick M. Kennedy,** John A. Kennedy & Assoc., IL [SE]
Rep. Nat'l Assn. of Fire Investigators
**Terry B. King,** Anderson Fire Dept., IN [U]
**Hunter B. Lacy,** Royal Insurance, NC [I]
**Georgia L. Leonhart,** Law Office of Georgia Lewis Leonhart, DE [C]
**Robert S. Levine,** U.S. Nat'l Inst. of Standards and Technology, MD [RT]
**Hal C. Lyson,** Robins, Kaplan, Miller & Ciresi, MN [C]
**James N. Macdonald,** Travelers Insurance Co., CT [I]
**Leo Marchand,** Insurance Crime Prevention Bureau, ON, Canada [I]
**L. Jeffrey Mattern,** Factory Mutual, PA [I]
**Kevin J. McGurk,** Connecticut Dept. of Public Safety, CT [E]
**J. Rick Miller,** U.S. Bureau of Alcohol, Tobacco & Firearms, KY [E]
**Kim R. Mniszewski,** Varley-Campbell & Assoc., IL [SE]
**Richard J. Roby,** Hughes Assoc., Inc., MD [SE]
**David M. Smith,** Associated Fire Consultants, AZ [M]
Rep. Int'l Fire Service Training Assn.
**Dennis W. Smith,** Atlantic City Fire Dept., NJ [U]
**David A. Sprowl,** Sims, Cozad, Morow & Manning [C]
**Joseph P. Toscano,** American Re-Insurance, CT [I]
Rep. Int'l Assn. of Arson Investigators Inc.
**Charles R. Watson,** S.E.A, Inc., OH [SE]

### Alternates

**Randall E. Bills,** S.E.A., Inc., OH [SE]
(Alt. to C. R. Watson)
**Joseph Callahan,** Aetna Life & Casualty, CT [I]
(Alt. to J. N. Macdonald)
**John A. Campbell,** Triodyne Fire and Explosion Engrs, IL [SE]
(Alt. to K. R. Mniszewski)
**John F. Goetz,** Royal Insurance Co., PA [I]
(Alt. to H. B. Lacy)
**Richard H. Hall,** Fire Protection Publications, OK [M]
(Alt. to D. M. Smith)
**Gerald Haynes,** U.S. Dept. of the Treasury, DC [E]
(Alt. to J. R. Miller)
**Thomas E. Minnich,** U.S. Fire Administration, MD [U]
(Alt. to A. M. Giglio)
**Harold E. Nelson,** Hughes Assoc., Inc., MD [SE]
(Alt. to R. J. Roby)
**Michael J. Schulz,** John A. Kennedy & Assoc., IL [SE]
(Alt. to P. M. Kennedy)
**Barry W. Slotter,** Robins, Kaplan, Miller & Ciresi, GA [C]
(Alt. to H. C. Lyson)
**William D. Walton,** Nat'l Inst. of Standards and Technology, MD [RT]
(Alt. to R. S. Levine)
**Larry E. West,** The Maryland Insurance Group, PA [I]
(Alt. to J. P. Toscano)
**Christopher B. Wood,** Custer Powell, Inc., MA [SE]
(Alt. to R. L. P. Custer)

### Nonvoting

**John J. Lentini,** Applied Technical Services, Inc., GA [SE]
Rep. American Society for Testing and Materials E-30

**Jerry W. Laughlin,** NFPA Staff Liaison

*This list represents the membership at the time the Committee was balloted on the text of this edition. Since that time, changes in the membership may have occurred. A key to classifications is found at the back of this document.*

NOTE: Membership on a committee shall not in and of itself constitute an endorsement of the Association or any document developed by the committee on which the member serves.

**Committee Scope:** This Committee shall have primary responsibility for documents relating to techniques to be used in investigating fires, and equipment and facilities designed to assist or be used in developing or verifying data needed by fire investigators in the determination of the origin and development of hostile fires.

**Table 8-4.6.1 Design and Construction Drawing that May Be Available**

| Type | Information | Discipline |
|---|---|---|
| Topographical | Shows the varying grade of the land | Surveyor |
| Site plan | Shows the structure on the property with sewer, water, electrical distributions to the structure | Civil engineer |
| Floor plan | Shows the walls and rooms of structure as if you were looking down on it | Architect |
| Plumbing | Layout and size of piping for fresh and waste water | Mechanical engineer |
| Electrical | Size and arrangement of service entrance, switches and outlets, fixed electrical appliances | Electrical engineer |
| Mechanical | HVAC system | Mechanical engineer |
| Sprinkler/fire alarm | Self-explanatory | Fire protection engineer |
| Structural | Frame of building | Structural engineer |
| Elevations | Shows interior/exterior walls | Architect |
| Cross section | Shows what the inside of components look like if cut through | Architect |
| Details | Show close-ups of complex areas | All disciplines |

## Chapter 9 Physical Evidence

**9-1* General.** During the course of any fire investigation, the fire investigator is likely to be responsible for locating, collecting, identifying, storing, examining, and arranging for testing of physical evidence. The fire investigator should be thoroughly familiar with the recommended and accepted methods of processing such physical evidence.

**9-2 Physical Evidence.** Physical evidence, defined generally, is any physical or tangible item that tends to prove or disprove a particular fact or issue. Physical evidence at the fire scene may be relevant to the issues of the origin, cause, spread, or the responsibility for the fire.

**9-2.1 Authority and Decision to Collect Physical Evidence.** The decision on what physical evidence to collect at the incident scene for submission to a laboratory or other testing facility for examination and testing, or for support of a fact or opinion, rests with the fire investigator. This decision may be based on a variety of considerations, such as the scope of the investigation, legal requirements, or prohibition. *(See Section 5-2.)* Additional evidence may also be collected by others, including other investigators, insurance company representatives, manufacturer's representatives, owners, and occupants.

**9-2.2* Comparison Samples.** When collecting physical evidence for examination and testing, it is often necessary to also collect comparison samples. *(See Figure 9-2.2.)*

The collection of comparison samples is especially important when collecting materials that are believed to contain liquid or solid accelerant. For example, the comparison sample for physical evidence consisting of a piece of carpeting believed to contain a liquid accelerant would be a piece of the same carpeting that does not contain any of the liquid accelerant. Comparison samples allow the laboratory to evaluate the possible contributions of volatile pyrolysis products to the analysis and also to estimate the flammability properties of the normal fuel present.

It is recognized that comparison samples may be unavailable due to the condition of the fire scene. It is also recognized that comparison samples are frequently unnecessary for the valid identification of ignitible liquid residue. The determination of whether comparison samples are necessary is made by the laboratory analyst, but because it is usually impossible for an investigator to return to a scene to collect comparison samples, they should be collected at the time of the initial investigation.



**Figure 9-2.2 Collection of a comparison sample.**

If mechanical or electrical equipment is suspected in the fire ignition, exemplar equipment may be identified and collected or puchased as a comparison sample.

**9-3* Preservation of the Fire Scene and Physical Evidence.** Every attempt should be made to protect and preserve the fire scene, as intact and undisturbed as possible with the structure, contents, fixtures, and furnishings remaining in their pre-fire locations. *(See Figure 9-3.)*

Generally, the cause of a fire or explosion is not known until near the end of the investigation. Therefore, the evidentiary or interpretative value of various pieces of physical evidence observed at the scene may not be known until, at, or near the end of the fire scene examination or until the end of the investigation overall. As a result, the entire fire scene should be considered physical evidence and should be protected and preserved.

The responsibility for the preservation of the fire scene and physical evidence does not lie solely with the fire investigator but should begin with arriving fire-fighting units or police



**Figure 9-3 Physical evidence at a fire scene. Evidence such as this small paper match could easily be destroyed or lost in an improperly preserved fire scene.**

authorities. Lack of preservation may result in the destruction, contamination, loss, or unnecessary movement of physical evidence. Initially, the incident commander and, later, the fire investigator should secure or ensure the security of the fire scene from unnecessary and unauthorized intrusions and should limit fire suppression activities to those that are necessary.

Evidence at the fire scene should not be considered only in a criminal context such as in traditional forensic evidence (e.g., weapons, bodily fluids, footprints) or limited to arson-related evidence, items, or artifacts such as incendiary devices or containers. Potential evidence at the fire scene and surrounding areas can include the physical structure, the contents, artifacts, and any materials ignited or any material on which fire patterns appear.

**9-3.1 Fire Patterns as Physical Evidence.** The evidentiary and interpretative value of fire patterns may be as valuable as the identification of a potential ignition source, such as an incendiary device in an arson fire or an appliance in an accidental fire. Fire patterns are the visible or measurable physical effects that remain after a fire. These include thermal effects on materials, such as charring, oxidation, consumption of combustibles, smoke and soot deposits, distortion, melting, color changes, changes in the character of materials, structural collapse, and other effects. *(See Section 4-3.)*

**9-3.2 Artifact Evidence.** Artifacts can be the remains of the material first ignited, the ignition source, or other items or components in some way related to the fire ignition, development, or spread. An artifact may also be an item on which fire patterns are present, in which case the preservation of the artifact is not for the item itself but for the fire pattern that is contained thereon.

**9-3.3 Protecting Evidence.** There are a number of methods that can be utilized to protect evidence from destruction. Some methods include posting a fire fighter or police officer as a sentry to prevent or limit access to a building, a room, or an area; use of traffic cones or numerical markers to identify evidence or areas that warrant further examination; covering the area or evidence with tarpaulins prior to overhaul; or isolating the room or area with rope, caution tape, or police line tape. The investigator may benefit from supervising overhaul and salvage operations.

Items found at the fire scene, such as empty boxes or buckets, may be placed over an artifact. However, these items may not clearly identify the artifact as evidence that should be preserved by fire fighters or others at the fire scene. If evidence is not clearly identified, it may be susceptible to movement or destruction at the scene.

**9-3.4 Role and Responsibilities of Fire Suppression Personnel in Preserving the Fire Scene.** Generally, fire officers and fire fighters have been instructed during basic fire training that they have a responsibility on the fire scene regarding fire investigation. In most cases this responsibility is identified as recognizing the indicators of incendiarism such as multiple fires, the presence of incendiary devices or trailers, and the presence of ignitible liquids at the area of origin *(see Chapter 17)*. While this is an important aspect of their responsibilities in the investigation of the fire cause, it is only a small part.

Prompt control and extinguishment of the fire protects evidence. The ability to preserve the fire scene is often an important element in the investigation. Even when fire officers and fire fighters are not responsible for actually determining the origin or cause of the fire, they play an integral part in the investigation by preserving the fire scene and physical evidence.

**9-3.4.1 Preservation.** Once an artifact or other evidence has been discovered, preliminary steps should be taken to preserve and protect the item from loss, destruction, or movement. The person making the discovery should notify the incident commander as soon as practical. The incident commander should notify the fire investigator or other appropriate individual or agency with the authority and responsibility for the documentation and collection of the evidence.

**9-3.4.2 Caution in Fire Suppression Operations.** Fire crews should avoid causing unnecessary damage to evidence when using straight stream hose lines, pulling ceilings, breaking windows, collapsing walls, and performing overhaul and salvage.

**9-3.4.2.1 Use of Water Lines and Hose Streams.** When possible, fire fighters should use caution with straight stream applications, particularly at the base of the fire, because the base of the fire may be the area of origin. Evidence of the ignition source can sometimes be found at the area of origin. The use of hose lines, and straight stream applications in particular, can move, damage, or destroy physical evidence that may be present.

The use of water hose lines for overhaul operations, like washing down, or for opening up walls or ceilings, should also be restricted to areas away from possible areas of origin.

The use of water should be controlled in areas where the investigator may wish to look at the floor for possible fire patterns. When draining the floor of standing water, the drain hole should be located so as to have the least impact on the fire scene and fire patterns.

**9-3.4.2.2 Overhaul.** It is during overhaul that any remaining evidence not damaged by the fire is susceptible to being destroyed or displaced. Excessive overhaul of the fire scene prior to the documentation and analysis of fire patterns can affect the investigation, including failure to determine the area of origin.

While the fire fighters have a responsibility to control and

to large complexes or multiple buildings, conflagrations involving a large dollar loss, or fires resulting in a large number of personal injuries. While major incidents are not always large in size or magnitude, they do tend to be more complex. As a result, the primary goal in such circumstances is to preserve the evidence and preserve the interests of the different parties involved.

Thorough investigations do not just happen, but instead are the result of careful planning, organization, and the ability to anticipate problems before they arise. Prior to actually beginning the scene investigation, numerous events, facts, and circumstances should be identified and considered before decisions are made as to how the investigation will flow. *(See Chapter 6.)*

**16-2 Understanding Between the Parties.** Interested parties should be allowed to participate in the investigation and examine the evidence in its undisturbed condition. No party should remove evidence or materials without adequate notice to other interested parties.

Different parties can conduct a joint investigation and still have separate and independent examinations. A joint investigation allows recording and examination of the scene as it is altered or examined or as evidence is collected. Allowing all interested parties an equal opportunity to establish the facts should eliminate future accusations of wrongdoing, such as altering the evidence or hiding facts. The parties should work together through coordination of the investigation. Personal interests should be subjugated to the truth.

Public officials conducting an investigation may have concerns about allowing other investigators to participate during a criminal investigation, but these concerns can be alleviated through proper planning and communication. Other investigators may be able to assist the public officials by providing their expertise, other experts, equipment, and personnel. The purpose of any investigation is to seek the facts.

**16-3 Agreement Between Parties.** An understanding or agreement should be developed through a consensus of the interested parties prior to conducting the investigation. The agreement should cover the following issues, where appropriate:

(a) Control and access to the site

(b) How and which information discovered during the investigation will be shared (such as through public agencies, interviews, or research)

(c) Joint custody and examination of evidence is usually a requirement for all parties. All parties should be notified prior to destructive examination. A sign-in sheet should be required to gain access to the evidence.

(d) The acquisition and processing of needed nonproprietary information from the parties through their identified representative

(e) Release of information to the public, which may be coordinated through one spokesperson, usually the public official

(f) A protocol for the scene examination and debris removal. This may require regular scheduled meetings to discuss the progress and the activities that are to be conducted. A person may be selected to chair the meetings and "lead" the scene examination.

(g) The development of a "flow chart" to provide guidance for the general scope of the investigation

Figure 16-3 is an example of a "Memorandum of Understanding" as an agreement for a joint investigation. It should be accompanied by Figure 16-5.

This Memorandum of Understanding relates to the investigation of the fire that occurred on July 1, 1998, at the Tall Building and Storage Facility, 1007 Main Ave., Any City, State, USA. It recognizes that a number of independent investigations are being conducted simultaneously and coincidentally and all with a common goal—to determine the origin and cause of the fire. All interested parties recognize that cooperation with one another will be beneficial to each party and will produce an efficient, quality outcome.

The parties agree to the following:

An origin and cause investigation is being conducted.

The investigation is being conducted by the Yourtown Fire Department, The Federal Fire Investigations, Payall Insurance Company, Any Storage Company, and the Tall Building Company.

All investigation procedures and the physical collection of the evidence will be coordinated through regular meetings. The evidence will be collected and stored in a location where access is monitored. No testing or examination of the evidence shall be conducted until all parties are notified.

All requests for data of a nonproprietary nature from the Tall Building Company or tenants should be processed through their identified representatives. Nonproprietary information provided by any party will be shared by all parties if requested.

All releases of information regarding the origin and cause of the fire will be coordinated through the Yourtown Fire Department, and no predisclosure of information will be made by any party.

The protocol recognizes that to remove material or conduct testing will require the permission of the Yourtown Fire Department and the undersigned parties. The request should be in writing; however, verbal agreement followed by written request and approval of the parties is acceptable when time frames are short.

Testing and examination protocol of materials associated with this investigation are as follows:

(1) All parties agree as to who will perform each examination and each test.

(2) All parties agree to allow any other party to observe each test.

(3) All parties agree to return any material remaining after each test to the storage facility.

Attached is an investigation flow chart to provide guidance for the general scope of the investigation.

**Figure 16-3 Memorandum of understanding.**

**16-4 Organization of the Investigation.** Each of the representative parties may develop a team, with its members conducting various aspects of their investigation. Interested parties may share the costs and services of specialized personnel such as evidence technicians, photographers, air quality people, safety coordinator, laborers, and so forth. Each of the teams should have a team leader who will participate in the "Team Leader Committee." Many functions of the "Team" and "Team Leader Committee" are similar in organization of their responsibilities. The Team Leader Committee organizes the investigation as a whole and coordinates the access to the evidence and the scene.

**16-5 Team Leader Committee.** The Team Leader Committee should coordinate access to the site through whoever has control of the scene. This may be the building owner, the insurance company, the public authorities, or the courts. The